UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| M.G. and D.G. on behalf of M.G., <br><br> *Plaintiff,* <br><br> v. <br><br> NORTH HUNTERDON-VOORHEES REGIONAL HIGH SCHOOL DISTRICT BOARD OF EDUCATION <br><br> *Defendant.* | Civil Action No.: 17-cv-12018 (PGS)(LHG) <br><br> MEMORANDUM AND ORDER |

SHERIDAN, U.S.D.J.

This matter is before this Court on two cross-motions for summary judgment (ECF No. 12 and 13). At oral argument both parties agreed that the matter may be resolved on these motions rather than conducting another hearing. The Court has subject matter jurisdiction pursuant to the Individuals with Disabilities Act (IDEA), 20 U.S.C.A. § 1400, et seq.

I.

As a preliminary matter, this is an appeal from a final order entered on October 13, 2017 by Administrative Law Judge Barry E. Moscowitz ("ALJ"). On November 22, 2017, Plaintiff filed a Complaint challenging the ALJ's decision because it "would result in unlawful discrimination against M.G.[1] and Plaintiffs on the basis of M.G.'s disabilities in violation of Section 504 and the IDEA. (Compl. "Compl." ECF No. 1, 30).

---

[1] One of the parents and the child have the same initials, "M.G.". In this memorandum, M.G. refers to the child.

1

I.

Plaintiff M.G. is presently an eighteen-year-old student (date of birth March 5, 2000), but at the time of decision, M.G. was a minor. M.G. has been diagnosed with Autism Spectrum Disorder and other related disabilities. (Complaint, ECF No. 1, 4). For more than ten years, M.G. attended the Developmental Learning Center ("Learning Center") in Warren, New Jersey.

Defendant, The North Hunterdon Voorhees Regional School District ("District"), is a regional educational agency of several municipalities and is subject to the regulations of the State of New Jersey, Department of Education, for the provision of educational services to children residing within the confines of its district, including children with special needs. The District is a recipient of federal funding for educational services it provides in accordance with IDEA and laws and regulations of New Jersey. *See, e.g. N.J.A.C.* 6A:14-1.1 et seq.

The District has identified M.G. as a child eligible for special education under IDEA as a student with autism. *See* 34 C.F.R. §300.7(c). When M.G. began attending the Learning Center in elementary school, a program for autistic students was not available within the District.

The Learning Center is approximately twenty-five miles from M.G.'s home in Pittstown, New Jersey. During her first year of high school, M.G. continued to attend the Learning Center; however, for her second year (2016-2017), the District initiated a specialized program at its Voorhees High School in Glen Gardner, New Jersey for students with autism. (Def. Br. pg. 2). According to the District, the specialized program offered the same instruction, support and services as provided at the Learning Center, and Voorhees High School is substantially closer to M.G.'s home. (Def. Br. p. 2). According to Defendant, throughout the three years of dispute, M.G. has attended the Learning Center at the District's expense, pursuant to the "stay put" provision of the IDEA. 20 U.S.C. §1415O. (Def. Br. p. 3).

On February 26, 2016, the District proposed removing M.G. from the Learning Center to its specialized program at Voorhees High School as set forth within an Individualized Educational Program ("IEP"). (Compl. 12; Def. SOF 5). Plaintiff declined the IEP on March 8, 2016, and filed a due process petition ("Petition No. 1"). (Def. SOF ¶6).

On April 28, 2017, the child study team at Voorhees High School offered M.G. a revised IEP which included placement in the autism program at Voorhees High School. (Id. ¶8). The revised IEP had many educational component including: (1) placement in a self-contained classroom at Voorhees High School, (2) a career development component of 495 minutes per week in the community, (3) group occupational therapy two times per week for thirty minutes, (4) group parent counseling and/or training services for 120 minutes weekly, (5) individual speech language therapy four times per week for thirty minutes, (6) group speech language therapy two times per week for thirty minutes each, (7) round trip transportation services between her home and school, (8) extended school year services, (9) a behavioral plan, (10) a transition plan from the Learning Center to the District, and (11) an ABA consultation and one-to-one aide. (Def. SOF 9). Plaintiff refused the IEP and filed a due process petition on June 14, 2017 (Petition 2). (Id. ¶14).

Petition 1 and Petition 2 were pending before the New Jersey Office of Administrative Law. ALJ Moscowitz consolidated both petitions and conducted a three-day hearing[2]. Since M.G. remained a student at the Learning Center when Petition 1 was pending, that proposed IEP was no longer an issue at the time of the hearing. As such, the ALJ only reviewed the IEP subject to Petition 2.

---

[2] According to Defendant, on January 24, 2018, the IEP team conducted another annual review and again offered M.G. a placement in its specialized program for students with autism at Voorhees High School. On February 9, 2018, Plaintiffs filed their third Petition for Due Process (Petition #3), again challenging the proposed in-district placement and seeking an order that the appropriate placement for M.G. is the Learning Center. Petition #3 is pending before the OAL.

3

The hearing before ALJ Moscowitz was a battle of the experts. The District included the testimony of Jessica Allora, the school psychologist, Andrea Quinn, clinical psychologist and behavior specialist associated with Rutgers University, and Mary Pat Publicover, Director of Special Education for the District. Plaintiff presented the testimony of D.G., father of M.G., and Michelle Miller, clinical psychologist and assistant professor at the Child Study Center of New York University.

On October 13, 2017, ALJ Moscowitz issued his Final Decision (ECF No. 13-5) in which he analyzed the testimony and written reports of the experts as well as M.G.'s father's testimony. Although M.G. has a long history of "self-injurious behaviors, eluding and other problematic behaviors, she has made meaningful progress at DLC over the years and the parents believe she should remain at DLC" (Final Decision, p. 2). Despite the Plaintiff's contention, ALJ Moscowitz found that "no genuine difference exists between the program petitioners recommend for M.G. and the program respondent offered for M.G." as set forth in Petition 2 (Final Decision, p. 24). He wrote:

> On this score the record is clear. First, I found that no genuine difference exists between the program petitioners recommend for M.G. and the program respondent offered for M.G. in the IEP dated April 28, 2017. Second, I found that the IEP dated April 28, 2017, includes the development of socialization skills, communication skills, life skills, and vocational skills, which the appropriate behavioral supports and a focus on the communication skills, and vocational skills in particular, which both parties agree M.G. needs, and that no competent evidence exists that M.G. will regress if she is placed in the in-district program. (Final Decision, p. 29).

Further, the ALJ asserted that D.G. and the Plaintiff's expert (Miller) were arguing for the optimal placement for M.G. at the Learning Center when the law requires the District to provide an appropriate placement.

The ALJ's finding was based on substantive reports and expert testimony, and he discredited the testimony and report of Plaintiff's witnesses. For example, Michelle Miller testified that the substantive content of the Petition 2 IEP was about the same as the Learning Center program; but the Petition 2 IEP was inappropriate because the students in the district program were higher functioning than M.G. Miller testified that the math and reading components would be challenging for M.G. The ALJ discredited that testimony by noting that Miller conceded that her assessment that the District students were higher functioning than M.G. was based on a one-time observation; and she did not know the level of functioning of each student she observed (Final Decision, p. 21).

Furthermore, the ALJ discredited M.G.'s father's testimony. The ALJ found that the testimony was "not anchored on any competent evidence beyond personal experience to which he "gave little weight" when determining the appropriateness of an IEP. (Final Decision, p. 20). Additionally, the ALJ referred to D.G.'s testimony as "sarcastic and other times sardonic", emotionally charged and that he was "unsparing in his criticism" of the District (Final Decision, p. 18, 19). The ALJ commented that the thrust of D.G.'s testimony focused on the child's safety, and his fear that M.G. might elope if placed in the District program.

### III.

The standard of review applied in an appeal of an administrative decision under the IDEA differs from the ordinary summary judgment standard. *See M.A. v. Voorhees Twp. Bd. Of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002), *aff'd,* 65 Fed. Appx. 404 (3d Cir. 2003). In the Third Circuit, a district court applies a standard known as modified de novo review. *See S.H. v. State-Operated Sch. Dist.*, 336 F.3d 260, 270 (3d Cir. 2003). Under this standard, the district court must give "due weight" and "deference" to the findings in the administrative proceedings. *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010); *Shore Reg'l High Sch. Bd. of Educ. v.*

*P.S.*, 381 F.3d 194, 199-200 (3d Cir. 2004). Factual findings are considered prima facie correct, and if the reviewing court does not adhere to them, it must explain why. *Bayonne Bd. of Educ.*, 602 F.3d at 564. When an ALJ has heard live testimony and made credibility determinations, his findings are given "special weight," and the Court must accept them unless extrinsic evidence in the record justifies a contrary conclusion. *Id.* at 564. "Specifically, this means that a District Court must accept the state agency's credibility determinations 'unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion.'" *Shore Reg'l High Sch. Bd. Of Ed.*, 381 F. 3d at 199.

The ALJ's legal determinations are reviewed de novo. *Muller v. Comm. on Special Educ.*, 145 F.3d 95, 102 (2d Cir. 1998); *F.D. v. Holland Twp. Bd. of Educ.*, Civ. No. 05-5237, 2007 U.S. Dist. LEXIS 49293, 2007 WL 2021782, *4 (D.N.J. July 9, 2007); *P.N. v. Greco*, 282 F. Supp. 2d 221, 235 (D.N.J. 2003). Applying these standards, the district court may make findings "based on the preponderance of the evidence and grant the relief it deems appropriate, including an award of attorney's fees, a requirement for reimbursement for a private educational placement, and a direction for the provision of a compensatory education." *Bayonne Bd. of Educ.*, 602 F.3d at 564 (citations omitted).

The party challenging an administrative decision bears the burden of persuasion and "faces the additional hurdle of overcoming a presumption that the Hearing Officer's findings were correct." *Andrew M. v. Delaware Cnty. Office of Mental Health & Mental Retardation*, 490 F.3d 337, 345 (3d Cir. 2007); *Hawkins v. Dist. of Columbia*, 539 F. Supp. 2d 108, 112 (D.D.C. 2008) (citing *Reid v. Dist. of Columbia*, 401 F.3d 516, 521, 365 U.S. App. D.C. 234 (D.C. Cir. 2005)); *Bd. of Educ. of Montgomery Cnty. v. Hunter*, 84 F. Supp. 2d 702, 705 (D. Md. 2000) (citing *Barnett v. Fairfax Cnty. Sch. Bd.*, 927 F.2d 146, 152 (4th Cir. 1991), *cert. den'd*, 502 U.S. 859, 112 S. Ct.

175, 116 L. Ed. 2d 138 (1991)). *Moorestown Twp. Bd. of Educ. v. S.D.*, 811 F. Supp. 2d 1057, 1064 (D.N.J. 2011).

Although the parties have agreed that the Court may decide whether the Petition 2 IEP is appropriate on the papers, since this matter is before the Court on motions for summary judgment, the principles of summary judgment also apply. Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch V. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); see also Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). See, *Alevras v. Tacopina*, 226 Fed. App'x. 222, 227 (3d Cir. 2007).

IV.

Plaintiff requests that the Court reverse the ALJ's findings of fact as to D.G.'s testimony, and reverse the ALJ's conclusion of law that the Petition 2 IEP is appropriate. This is a difficult hurdle. As noted above, the standard applied to the challenge of an ALJ's decision is modified de novo review. The Court must give deference to the ALJ's findings of fact, and his legal determinations are reviewed de novo.

In looking at the findings of fact, the ALJ's use of the word "sardonic" in describing D.G.'s testimony may have been a stretch. Most judges understand the parent's stress in a situation such as this, and would assess the parent's credibility in light of such stress. However, D.G. alerted ALJ Moscowitz to the elopement issue, and the ALJ analyzed it in the Final Decision. The ALJ found that Ms. Allora testified that elopement was not a major issue with the District's child student team because there was only one past incident, and M.G. would be assigned a one-to-one aid to assure elopement would be prevented. (Final Decision, p. 11-12). As such, the ALJ also found that there were "no instances of elopement or self-injurious behavior in the last year." (Final Decision, p. 24).

Plaintiff argues that the District failed to establish that the proposed program could adequately provide for M.G.'s safety citing to an incident that was not discussed within the ALJ's final decision. D.G. testified that during their first visit to the District program, M.G. sneaked away from the group, walked past people in the halls, exited the school building, and proceeded across the parking lot. D.G. was the first one to notice that M.G. was missing, and her mother tracked her down before any harm occurred. (Transcript of Testimony 8/16/17, pp. 73-74). D.G. testified that M.G. had no such incidents at the Learning Center in the past. Certainly, this was a peculiar event where both the parents and school officials were present and despite same, M.G. still eloped; but it is unlikely that this would occur when the Petition 2 IEP is

8

in place because M.G. will be escorted with a one-on-one aide at all times. Given that ALJ Moscowitz carefully considered the elopement issue, the Court defers to such findings of fact.

Plaintiff further contends that the ALJ's findings are incorrect because M.G.'s parents should have had more input at the IEP meetings. Plaintiffs argue that the parents should be afforded a greater opportunity to participate as members of the IEP team. Undoubtedly, the IDEA's goal is for the child study team to communicate with and consider the views of the parents as part of the decision making process. (Pl. Br. P. 11). For example, one regulation (34 C.F.R. 330.322) states that a school district should "take steps to ensure . . . parents . . . are present at each IEP team meeting or are afforded the opportunity to participate" through reasonable notification. 34 C.F.R. 300.222. Given this regulation, Plaintiffs have not shown any evidence that the District has failed to provide such notice, or that the parents were not notified by the IEP team concerning M.G.'s placement.

Finally, Plaintiffs argue that the ALJ erred in finding that no genuine difference exists between the Learning Center program and the District's program. (Final Decision, p. 23). Plaintiff argues that although the goals of the programs are the same, the instructional methodology are very different. (Pl. Br. at pg. 17). For example, the District program would have M.G. spend half of her day in English, math, and science classes with higher functioning students. In contrast, the Learning Center program does not have academic classes, rather the Learning Center works on "functional and pragmatic life skills in programming that varies throughout the day." (Pl. Br. pg. 19). The ALJ addressed this issue at length. First, he discredited Miller's testimony that she observed higher functioning students in the District's program when she visited it because she conceded that she did not know the academic scores of the alleged higher functioning students. Further, it was Ms. Publicover's testimony that M.G. is one of the higher functioning students at the Learning Center. Due to M.G.'s higher potential, Ms. Publicover believed that M.G. would

benefit by attending the District's program. (Final Decision, p. 18). Next, the ALJ noted that Ms. Allora testified that M.G. had an inability to interact with higher functioning students at the Learning Center, and that interaction between M.G. and higher functioning students in the District program would be a significant beneficial factor. (Final Decision, p. 6,7). Last, Ms. Quinn (who disagreed with Ms. Miller's assessment) testified that the instructors in the District program have the tools to differentiate the teaching and instruction if an issue arises with higher functioning students. (Final Decision, p. 13). In light of the above, Plaintiff has not met their burden of overcoming the presumption that the ALJ's findings were correct." *Andrew M.*, 490 F.3d 337, 345 (3d Cir. 2007).

In conclusion, the ALJ made extensive findings of fact in his decision that were based on a review of the April 28, 2017 IEP, multidisciplinary evaluations, as well as testimony of the parties' expert witnesses elicited at the three day hearing. Ultimately, the ALJ found that the IEP offered by the District "is reasonably calculated to provide M.G. with significant learning and meaningful educational benefits in light of M.G.'s individual needs and potential, that is, it is appropriately ambitious in light of those circumstances, and that it does so in the least restrictive environment, warranting a return to the district where M.G. will have exposure to higher-functioning peers."

Applying the modified de novo review, the Court finds Plaintiff has not overcome the due weight and deference the Court yields to the findings of ALJ Moscowitz. His conclusions are consistent with the goals and purposes of IDEA.

**ORDER**

This matter, having been brought before the Court by Plaintiff's motion for summary judgment (ECF No. 12) and Defendant's motion for summary judgment. (ECF No. 13), and the Court having considered the briefs and submissions of the parties, and having heard oral argument; and for good cause shown, and for all of the foregoing reasons,

IT IS on this October 2, 2018,

ORDERED that Plaintiff's motion for summary judgment (ECF No. 12) is denied;

ORDERED that Defendant's motion for summary judgment (ECF No. 13) is granted.

The Clerk is directedly to close the file.

*[signature]*
PETER G. SHERIDAN, U.S.D.J.